# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| G&G CLOSED CIRCUIT EVENTS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ARTURO FLORES, et al.,<br><br>Defendants. | 1:18-cv-001248-LJO-JLT<br><br>ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT (ECF NOS. 26 & 27) |

## I. PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Harris to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. Chief District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Chief Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Chief Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno

1

Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the Nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from inside or outside the Eastern District of California.

## II. INTRODUCTION

In this matter, G&G Closed Circuit Events, LLC ("G&G" or "Plaintiff") alleges that on September 16, 2017, Defendants Arturo Flores ("A. Flores") and Alejandro Vasquez ("Vasquez") unlawfully and without prior authorization broadcast a closed-circuit boxing match (*Gennady Golovkin v. Saul Alvarez IBF World Middleweight Championship*) at two locations: the common area of the "Los Amigos Swapmeet," located in Bakersfield, California; and in "La Placita," a commercial establishment located within the Los Amigos Swapmeet. ECF No. 1 at ¶ 11; 1:18-cv-1249, ECF No. 1 at ¶ 15.[1] Plaintiff advances four causes of action: (1) violation of 47 U.S.C. § 553 ("section 553"); (2) violation of 47 U.S.C. 605(a) ("section 605(a)"); (3) conversion; and (4) violation of California Business and Professions Code § 17200, *et seq*. ("section 17200"). Before the Court for decision are cross motions for summary judgment. ECF Nos. 26 and 27. The matter was taken under submission on the papers without oral argument. ECF No. 32. For the reasons set forth below, both motions are DENIED.

## III. STANDARD OF DECISION

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility

---

[1] The member case, *G&G Closed Circuit Events, LLC v. Arturo Flores, et al.*, 1:18-cv-1249 LJO-JLT, was consolidated with the above captioned action. ECF No. 25. Where it is necessary to refer to the member case, the Court will provide that case number before the Electronic Case File docket number. All other docket number references are to the above-captioned matter.

2

determinations or weigh the evidence. *See id.* at 255; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Liberty Lobby, Inc.*, 477 U.S. at 249-50. A fact is "material" if its proof or disproof is essential to an element of a plaintiff's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby, Inc.*, 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted).

The moving party bears the initial burden of informing the Court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323. If the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(c); *Liberty Lobby, Inc.*, 477 U.S. at 250.

## IV. ANALYSIS

As mentioned, due to its extraordinary caseload, this Court will not belabor its analysis of the pending cross motions. It only addresses the arguments raised by the parties and limits is analysis and explanations to those issues and facts necessary to its decision.

### A. Statutory Authorities

47 U.S.C. § 605 addresses unauthorized publication or use of wire or radio communications and provides in pertinent part:

> (a) . . . no person receiving, assisting in receiving . . . any interstate . . . communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney . . . No person having received

3

any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

***

(e) (3)(A) Any person aggrieved by any violation of subsection (a) of this section ... may bring a civil action in a United States district court or in any other court of competent jurisdiction.

47 U.S.C. § 553 addresses unauthorized reception of cable service and provides in pertinent part:

(a) (1) No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

***

(c) (1) Any person aggrieved by any violation of subsection (a) (1) of this section may bring a civil action in a United States district court or in any other court of competent jurisdiction.

47 U.S.C. § 605(e)(3)(C)(i)(II) authorizes statutory damages "not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(ii) authorizes damages up to $100,000 if the court finds the violation was willfully committed for commercial advantage or private financial gain. Alternatively, if "the court finds that the violator was not aware and had no reason to believe that his acts constituted violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250." 47 U.S.C. § 605(e)(C)(iii).

47 U.S.C. § 553(c)(3)(A)(ii) authorizes statutory damages "of not less than $250 or more than $10,000 as the court considers just," and 26 U.S.C. § 553(c)(3)(B) authorizes damages up to $50,000 if the court finds the violation was willfully committed for commercial advantage or private financial gain. Alternatively, "where the court finds the violator was not aware and had no reason to believe his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to

sum not less than $100." 47 U.S.C. § 553(c)(3)(C).

Claims premised on sections 553 and 605(a) are often pled in the alternative or together in signal piracy cases. Some courts have "concluded that section 605(a) applies exclusively to broadcasts obtained by way of a satellite television signal, as opposed to transmissions over a cable system, and that section 553 applies exclusively to transmission over a cable system." *J & J Sports Prods., Inc. v. Torres*, No. 2:11-CV-00653 JAM, 2011 WL 6749817, at *4 (E.D. Cal. Dec. 22, 2011) (collecting cases). Other courts have recognized "that § 605 encompasses the interception of satellite transmissions to the extent reception or interception occurs prior to or not in connection with, distribution of the service over a cable system, and no more." *Id.* (*quoting TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 204-07 (3d Cir. 2001)).

**B.      Defendants' Motion for Summary Judgment**

Defendants A. Flores and Vasquez move for summary judgment as to all claims in the consolidated cases. Defendants premise their motion on two arguments. First, Defendants maintain that they did not own or operate "the business" at the time in question. ECF No. 26 at 5-7. Second, they present evidence that "the subject location" was authorized to receive the signal. ECF No. 26 at 7.

As to the issue of ownership and control, "[i]ndividual liability under the [sections 553 and/or 605(a)] requires that the individual authorize the underlying violations." *J & J Sports Productions, Inc. v. 291 Bar & Lounge, LLC*, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009). "Put differently, the complaint must establish that the individual had a 'right and ability to supervise' the violations, as well as an obvious and direct financial interest in the misconduct." *291 Bar & Lounge*, 648 F. Supp. 2d at 473 (quoting *Softel, Inc., v. Dragon Medical and Scientific Communications, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997)).

According to Defendant Vasquez's declaration, he and A. Flores did at one time own Los Amigos Swapmeet as partners; however, Vasquez sold his interest in the Los Amigos Swapmeet to Defendant A. Flores in late 2009. *See* Declaration of Alejandro Vasquez ("Vasquez Decl."), ECF No.

5

26-17 ¶ 2. Specifically, Vasquez asserts the partnership "has long been dissolved." Vasquez Decl. at 26-7 at ¶ 2. According to Vasquez, on October 2, 2009, he and A. Flores entered into an agreement to dissolve the partnership, and on November 1, 2009, A. Flores paid Vasquez the agreed upon money to purchase Vasquez's interest in the partnership. *Id*. Vasquez also indicates that "for many years," he has lived in Sherwood, Oregon and had "no knowledge of the events taking place" at the Los Amigos Swapmeet on or about September 2017. *Id*. at ¶ 3. Although Vasquez does not separately mention ownership of La Placita, the obvious implication of his declaration is that he disavows any ownership interest in any activities at or within Los Amigos Swapmeet. Therefore, Vasquez disclaims having any ability to control, or financial interest in, either the Swapmeet or La Placita as of the date of the alleged piracy in September 2017.[2]

Defendant A. Flores admits that he did have an ownership interest in the Los Amigos Swapmeet as of September 2017, but asserts that he had no ownership interest or control over La Placita, which had been leased to Edwin Flores ("E. Flores"). *See* Declaration of E. Flores ("E Flores Decl."), ECF No. 26-4 ¶ 2. As proof of this, Defendants provide a copy of a lease agreement purporting to be between "Arturo Flores or Alejandro Vasquez" on behalf of Los Amigos Swapmeet and E. Flores, covering a five-year time period starting on January 1, 2016. *Id*. at ¶ 2 & Ex. A (ECF No. 26-5).[3] The lease specifically indicates that it covers a 4,000 square foot area designated as "Space #34" within the Los Amigos Swapmeet. *Id*. It appears to be undisputed that Space #34 is the commercial establishment referred to as La Placita. *See* A. Flores Decl. at ¶ 2; ECF No. 27-2 at 5 of 32 (copy of liquor license for La Placita operating at Space #34 within the Los Amigos Swapmeet).

However, the record also contains evidence that suggests both Defendant A. Flores and

---

[2] Plaintiff objects to Vasquez's declaration on numerous grounds. Because Defendants' motion for summary judgment will be denied, the Court need not address those objections here. Certain of the objections are addressed below in the context of evaluating Plaintiff's motion for summary judgment.

[3] Although Plaintiff take issue with the authenticity of this lease, the Court will assume it authentic for purposes of analyzing Defendants' motion for summary judgment.

Defendant Vasquez possessed some form of ownership interest and/or management control over both the Swapmeet and La Placita as of September 2017. First, both the lease discussed above and relied upon by Defendants, as well as a separate lease (with a different date of coverage) disclosed to Plaintiff during discovery, indicate that Los Amigos Management is a "general partnership" and that the lease could be signed by either Arturo Flores or Alejandro Vasquez. *See* ECF No. 26-5, Ex. A (lease submitted by Defendants covering period from 2018- 2023); ECF No. 27-2 at 18 of 32 (lease submitted by Plaintiff covering period from 2016-2021). This alone is sufficient to create a dispute of fact as to whether the partnership between Arturo Flores and Alejandro Vasquez ever dissolved. In addition, Plaintiff presents a copy of the liquor license for La Placita covering the period from October 2016 through October 2018, which lists both A. Flores and Alejandro Vasquez as the licensees. ECF No. 27-2 at 5 of 32. This also is sufficient to create a dispute of fact as to whether A. Flores and Alejandro Vasquez had any ownership interest or control over La Placita.

As to the argument that "the subject location" was authorized to receive the signal, Defendants present a copy of a written "Close[d] Circuit TV Contract," dated September 11, 2017 ("Contract"). E. Flores Decl., Ex. B (ECF No. 26-6). The agreement is signed by E. Flores as the owner of "El Tazumal," located at Space #13 within the Los Amigos Swapmeet, and Jose Pelayo, who, according to the Contract, represented J&J Sports Productions, Inc. The agreement states:

> By this contract, Jose Pelayo agree[s] to legally acquire and pay for the close[d] circuit transmission rights for the Boxing event on Saturday Sept 16, 2017. Approximately between 5pm and 9pm to provide a live feed to EL TAZUMAL for which Edwin Flores is the owner.
>
> As payment for services Jose Pelayo will be entitled to receive 100% of the admission fees for this event between the hours of 5 pm and 9 pm.
>
> EDWIN FLORES, Agrees to provide food and beverages for said events for which they will keep all proceeds.
>
> Jose Pelayo will provide said event but is not responsible for program changes such as boxing schedules or cancellations due to injuries or disqualifications etc.

7

> Edwin Flores of EL TAZUMAL, REST, will be responsible for providing adequate security service for said event as well as providing acceptable television monitors and speakers for broadcast of the events.

*Id.*

It is undisputed that neither Jose Pelayo nor J&J Sports Productions actually had the rights to authorize broadcast of the Program. *See* Declaration of Nicolas J. Gagliardi ("Gagliardi Decl."), ECF No. 27-4 at ¶ 13. Nonetheless, even assuming one or both did possess such right, neither the Contract itself nor the declaration of E. Flores referencing the Contract demonstrates that anyone at La Placita, located at Space #34, could possibly have acquired the rights to broadcast the Program. The Contract bears the name and location of a different business. Therefore, Defendants have failed to create a material dispute of fact that the subject location – La Placita – was authorized to broadcast the event.

Defendants' motion for summary judgment is therefore DENIED.

At least at this point in the litigation, the Court need not engage in the more complicated task of evaluating to what extent such a Contract could ever excuse a business from liability under sections 503 and or 605(a).

**C.      Plaintiff's Motion for Summary Judgment**

Plaintiff moves for summary judgment on its section 605(a) and conversion claims against Defendants A. Flores and Vasquez. It does not move for judgment on the section 553 or section 17200 claims.

As to Defendant Vazquez, even assuming the Program was displayed unlawfully within both Los Amigos Swapmeet and La Placita, there are disputes of fact as to whether Vasquez has any ownership interest in either business. As mentioned, Vasquez has submitted a declaration indicating that, while he previously owned Los Amigos Swapmeet with A. Flores, the partnership "has long been dissolved." Vasquez Decl. at 26-7 at ¶ 2. According to Vasquez, on October 2, 2009, he and A. Flores entered into an agreement to dissolve the partnership, and on November 1, 2009, A. Flores paid Vasquez the agreed upon money to purchase Vasquez's interest in the partnership. *Id.* Vasquez asserts that the dissolution

agreement was recorded in January 2010, but does not provide a copy of the agreement. *Id*. Vasquez also indicates that "for many years," he has lived in Sherwood, Oregon and had "no knowledge of the events taking place" at the Los Amigos Swapmeet on or about September 2017. *Id*. at ¶ 3. As discussed above, the implication of his declaration is that he disavows any ownership interest in any activities at or within Los Amigos Swapmeet, including within La Placita. On summary judgment, the Court must accept the non-moving party's facts as true and construe those facts in the light most favorable to that non-moving party.

      G&G objects to the admissibility of Vasquez's statements regarding the partnership on several grounds, all of which are without merit. First, G&G argues that Vasquez's declaration violates the best evidence rule. *See* ECF No. 18-4 at 2-3. Specifically, G&G maintains that "[i]n light of the purported recordation of the alleged partnership agreement, the document is the best evidence of that purported agreement." *Id*. Federal Rule of Evidence 1002 provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Although it is not entirely clear, it appears that G&G is arguing that Vasquez cannot testify at all about the dissolution of the partnership without producing that agreement. "Where the rule applies, the proponent must produce the original (or a duplicate, *see* Fed. R. Evid. 1003) or explain its absence. Fed. R. Evid. 1002, 1004." *United States v. Bennett*, 363 F.3d 947, 953 (9th Cir. 2004). But, the rule only applies when the content of the item is sought to be proved. *Id*. (citing Fed. R. Evid. 1002 Advisory Committee's note, which provides that "[a]n event may be proved by nondocumentary evidence, even though a written record of it was made."). Here, Vasquez has clearly declared that his partnership with A. Flores dissolved in 2009. Vasquez Decl. at ¶ 2 ("that partnership has long been dissolved and I had no ownership interest or any control over that location since the year 2009"). He offers the existence of a dissolution agreement as additional corroboration of that statement, but G&G points to no authority suggesting that the event of dissolution must be proved by the written instrument. G&G also raises, without explanation, a hearsay objection. *See* ECF No. 28-4 at 2-3 (in connection with the best evidence

argument, "along those lines, anything Mr. Vasquez purports to say with respect to the agreement is also hearsay."). Vasquez's assertions about entering into a dissolution agreement with A. Flores and the fact that A. Flores paid him money to consummate that agreement do not implicate the rule against hearsay. *See* Fed. R. Evid. 801 ("Hearsay" means "a <u>statement</u> that . . . the declarant does not make while testifying at the current trial or hearing . . . .") (emphasis added). These objections are OVERRULED. As a result, there is a dispute of fact as to whether Vasquez had any ownership interest or control over either Los Amigos Swapmeet or La Placita. This precludes summary judgment against him as to the section 605(a) claim. *291 Bar & Lounge*, 648 F. Supp. 2d at 473.

There is also a dispute of fact as to whether the Program was displayed in the common area of Los Amigos Swapmeet. On the one hand, Plaintiff has presented direct evidence that the Program was shown on a TV outside the entrance to La Placita. *See* Declaration of JD Kaplan, ECF No. 27-5 ("I observed on 1 tv in the common area showing the pay per view event, Canelo vs Golovkin."); Supplemental Declaration of JD Kaplan, ECF No. 27-6 at ¶¶ 4-5 (explaining that a photograph attached to his original declaration depicts the "common area" at Los Amigos Swapmeet). However, A. Flores examined the evidence in the case and insists "based upon [his] familiarity with this location the exhibition of the subject TV program on September 16, 2017, took place in Space 34." A. Flores Decl. at ¶ 2. Admittedly, this is not particularly detailed contrary evidence. However, the Court's has reviewed the photograph submitted by Mr. Kaplan and finds it plausible that a finder of fact could conclude that the television depicted therein is attached to or at least strongly associated with the establishment whose entrance is depicted centrally in that photograph, an establishment the Court presumes (for purposes of this motion) is La Placita. ECF No. 27-5 at 5 of 12. Absent deposition testimony demonstrating that A. Flores' assertion is a sham, which has not been presented, and viewing this evidence in the light most favorable to Plaintiff, as the Court must, the Court concludes for purposes of this motion only that the Program was displayed solely in La Placita.

As mentioned above in the context of the Court's analysis of Defendants' motion for summary

judgment, Plaintiff has presented evidence that suggest both A. Flores and Vasquez possessed some ownership interest or control over La Placita. Among other things, Plaintiff presents a copy of the liquor license for La Placita covering the period from October 2016 through October 2018, which lists both A. Flores and Vasquez as the licensees. ECF No. 27-2 at 5 of 32. However, Defendants have presented sufficient evidence to raise a dispute on this factual issue. A. Flores states in his declaration that Los Amigos Swapmeet leased Space 34 to E. Flores, who managed and operated La Placita as an independent business at the time of the allegedly unlawful broadcast. A. Flores Decl. at ¶ 2. E. Flores' declaration supports this assertion, E. Flores Decl. at ¶ 3, as does the copy of the lease Defendants provided. *See* ECF No. 26-5.[4]

Together, the above conclusions–that for purposes of summary judgment, the Court must assume that the Program was displayed only in La Placita and that A. Flores did not own or operate La Placita– are fatal to G&G's motion on its section 605(a) claim against A. Flores as well.

Finally, the above facts also dispose of G&G's motion for summary judgment on its state law conversion claim. The elements of a conversion claim under California law are: "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1065 (1998). Although "conversion is a strict liability tort," *id.*, liability still requires proof that it was the <u>defendant</u> who converted the property. The above discussion demonstrates that there are disputes of fact as to whether (1) any broadcast was made outside La Placita; and (2) whether either Defendant had any

---

[4] Plaintiff objects that the version of the lease submitted by Defendants was not disclosed to them during discovery and therefore should be excluded. ECF No. 28-4 at 3. Specifically, Defendants suggest that the lease should have been disclosed to Plaintiff as part of Defendants' initial disclosures under Fed. R. Civ. P. 26(a)(1)(A)(i)(requiring disclosure of a copy of any document a party has in its possession, custody, or control that it "may use to support its claims or defenses"), and that Defendants have not even attempted to justify a late disclosure. The Court agrees, but nonetheless finds that the lease itself is not required to create a dispute of fact as to Defendants' ownership or control over La Placita. E. Flores' Declaration alone establishes that he leased Space #34 and that Defendants did not exercise management control over La Placita's operations. That a lease may be required for enforcement purposes under the statute of frauds, Cal. Civ. Code § 1624(a)(4), does not render E. Flores' testimony irrelevant or immaterial.

ownership interest or control over activities at La Placita on the date of the allegedly unlawful broadcast. Accordingly, G&G's motion for summary judgment on the conversion claim is DENIED.[5]

## V. <u>PROCEDURAL MATTERS</u>

The parties have submitted a stipulation to vacate pretrial and trial dates based upon their erroneous assumption that one of their motions for summary judgment would be granted and therefore would dispose of the case. *See* ECF No. 36. Accordingly, the Court deems the stipulation to be without good cause and therefore it is NOT APPROVED.

Relatedly, Plaintiff embeds within its motions papers a request to re-open discovery so that it may depose Defendants about the copy of the lease Defendants submitted in connection with Defendants' motion for summary judgment. *See* ECF No. 28-4. The Court declines to rule on that request in the context of this motion, having found above, *see supra* note 4, that the lease is not necessary to dispose of the present motions.

## VI. <u>CONCLUSION AND ORDER</u>

For the reasons set forth above:

(1) The motions for summary judgment are DENIED; and

(2) The parties' stipulation to vacate all pretrial and trial dates is NOT APPROVED.

IT IS SO ORDERED.

Dated: __**August 14, 2019**__            _____/s/ Lawrence J. O'Neill_____
                                          UNITED STATES CHIEF DISTRICT JUDGE

---

[5] The Court does not agree with G&G that Defendants conceded as to G&G's motion for summary judgment on the conversion claim. *See* ECF No. 33 at 4. Defendants' opposition to G&G's motion argues that G&G's motion should be denied in its entirety because Defendants did not own or operate the business where the exhibition took place. ECF No. 30 at 2.

12